EXHIBIT "A"

COPY

1   THE FELDMAN LAW FIRM
    A Professional Law Corporation
2   ALICIA OLIVARES (SBN 181412)
    alicia@leefeldmanlaw.com
3   JOHN F. JUENGER (SBN 225201)
    jjuenger@leefeldmanlaw.com
4   10100 Santa Monica Blvd., Suite 2490
    Los Angeles, California 90067
5   Phone: (310) 552-7812
    Fax: (310) 552-7814
6
    Attorneys for Plaintiff,
7   DAVID W. RUTTER

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 08 2008

John A. Clarke, Executive Officer/Clerk

BY SHAUNYA WESLEY, Deputy

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10                                                        BC 395990

11   DAVID W. RUTTER, an individual,        CASE NO.

12                                          UNLIMITED JURISDICTION

13          Plaintiff,                      COMPLAINT FOR DAMAGES FOR:

14      vs.                                 1.  VIOLATION OF THE CALIFORNIA
                                                FAMILY RIGHTS ACT, GOV. CODE
15   DARDEN RESTAURANTS, INC., a                § 12945.2;
     Florida Corporation;                   2.  RETALIATION FOR EXERCISING
16   THE RED LOBSTER, a Corporation;            RIGHTS UNDER CFRA;
     JANE DIANGE, an individual;            3.  DISCRIMINATION ON THE BASIS
17   JIM MCKEATING, an individual;              OF DISABILITY IN VIOLATION OF
     And DOES 1 through 100, Inclusive.         GOV. CODE § 12940(a);
18                                          4.  FAILURE TO ACCOMMODATE
            Defendants.                         DISABILITY IN VIOLATION OF
19                                              GOV. CODE § 12940(m);
                                            5.  FAILURE TO ENGAGE IN THE
20                                              INTERACTIVE PROCESS IN
                                                VIOLATION OF GOV. CODE §
21                                              12940(n);
                                            6.  RETALIATION FOR EXERCISING
22                                              RIGHTS UNDER THE FAIR
                                                EMPLOYMENT AND HOUSING
23                                              ACT;
                                            7.  WRONGFUL TERMINATION IN
24                                              VIOLATION OF PUBLIC POLICY;
                                            8.  WRONGFUL TERMINATION IN
25                                              VIOLATION OF PUBLIC POLICY
                                                (LABOR CODE § 132(a))
26                                          9.  INTENTIONAL INFLICTION OF
                                                EMOTIONAL DISTRESS
27
                                            DEMAND FOR A JURY TRIAL
28

                                    1

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

Exhibit _____A_____, Page __10__

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1    COMES NOW, Plaintiff DAVID W. RUTTER (hereinafter "Plaintiff"), who alleges against

2    Defendants, and each of them, as follows:

3    <u>GENERAL ALLEGATIONS</u>

4    1.    Plaintiff is, and at all times herein mentioned was, an individual residing in Kern

5    County in the State of California. Plaintiff was employed by Defendant DARDEN RESTAURANTS,

6    INC. from May 29, 1006 to on or around April 2, 2008 as a Director of Operations.  Plaintiff was

7    employed by defendants to supervise and operate restaurants throughout Los Angeles County.

8    2.    DARDEN RESTAURANTS, INC. is and at all times relevant hereto a corporation

9    incorporated in the State of Florida.  DARDEN RESTAURANTS, INC. is duly licensed to do

10    business within the state of California, and at all times hereinafter mentioned, is an employer who

11    owns and operates restaurant establishments throughout the State of California, and whose

12    employees are engaged throughout this county and the state of California.

13    3.    THE RED LOBSTER is and at all times relevant hereto a corporation incorporated in

14    the State of Florida.  THE RED LOBSTER is duly licensed to do business within the state of

15    California, and at all times hereinafter mentioned, is an employer who owns and operates restaurant

16    establishments throughout the State of California, and whose employees are engaged throughout this

17    county and the state of California.

18    4.    For the duration of Plaintiff's employment, Plaintiff was jointly employed by

19    DARDEN RESTAURANTS, INC. and THE RED LOBSTER (hereinafter collectively referred to as

20    "DARDEN RESTAURANTS") and DOES 1 through 100, Inclusive, are the joint employers of

21    Plaintiff, and at all relevant times herein jointly employed all individual defendants named in the

22    Complaint.

23    5.    Defendant, JANE DIANGE (hereinafter "DIANGE"), is, and at all times herein

24    mentioned was, an individual and resident of the State of California. At all times mentioned herein,

25    DIANGE was employed by defendants in a managerial capacity as the Senior Vice President of

26    Human Resources.

27    6.    Defendant, JIM MCKEATING (hereinafter "MCKEATING"), is, and at all times

28    herein mentioned was, an individual and resident of the State of California.  At all times mentioned

2
COMPLAINT FOR DAMAGES

herein, DIANGE was employed by defendants in a managerial capacity as the Senior Vice President of Operations, and was Plaintiff's direct supervisor.

7.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names, Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible as hereinafter shown for the occurrences and injuries to Plaintiff as herein alleged.

8.      Plaintiff is informed, believes, and alleges that, at all times herein mentioned, Defendants, and each of them, were the agents of each of the other defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency and with the permission and consent of their co-defendants.

## VENUE AND JURISDICTION

9.      Venue is proper under Government Code Section 12965(b) and Code of Civil Procedure Section 395 in that Plaintiff's injuries were incurred within this jurisdiction, and the actions that give rise to Plaintiff's complaint arose within this jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.      Plaintiff exhausted his administrative remedies by filing a complaint against each of the named defendants herein with the California Department of Fair Employment and Housing (hereinafter "DFEH") within one year from the date of Defendants' last adverse employment action, and thereafter receiving "Right-to-Sue" letters from the DFEH.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT,

## GOV. CODE § 12945.2

(As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)

11.      Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-10, inclusive, above, as though fully set forth in this cause of action.

12.      Defendants DARDEN RESTAURANTS and Does 1 through 100, inclusive ("hereinafter collectively referred to as "Defendants"), are employers within the meaning of and

3

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

Exhibit ___A___, Page___12___

1  subject to Government Code § 12945.2, commonly known as the California Family Rights Act

2  (hereinafter "CFRA") in that defendants, and each of them, are engaged in commerce or an industry

3  or activity affecting commerce, and employ 50 or more employees for each working day during each

4  of 20 or more calendar workweeks in the current or preceding calendar year.

5        13.     Plaintiff was employed by Defendants from in or around May 29, 1996 to on or

6  around April 2, 2008. At the time of Plaintiff's termination, Plaintiff was employed by defendants

7  for more than 12 months; worked at least 1,250 hours during the previous 12 months, and was

8  employed at a worksite where 50 or more employees were employed by Defendants, and each of

9  them, within 75 miles of that worksite.

10       14.     In approximately December 2006, Plaintiff sustained an industrial injury that caused

11  him to sustain a serious health condition, as defined under Government Code § 12945.2, for which

12  he required surgery in March 2007 and, which necessitated that he take time off work beginning in

13  March 2007.

14       15.     Plaintiff provided information to defendants regarding his medical condition and his

15  need for time off work sufficient to put Defendants on notice that Plaintiff was eligible and qualified

16  for leave under CFRA.

17       16.     Plaintiff further provided notice to Defendants of his need for additional leave for

18  future surgeries necessitated to alleviate his serious health condition.

19       17.     An employee is entitled to leave of absence under CFRA because of a serious health

20  condition of the employee.

21       18.     It is an unlawful employment practice for defendants, and each of them, to violate an

22  employee's rights under CFRA. Gov. Code § 12945.2(a). In addition, an employer may not

23  discriminate and/or discharge an employee for exercising any right under CFRA. Gov. Code §

24  12940(h) and 2 Cal. Code of Regulations § 7297.7.

25       19.     Defendants failed to provide the benefits afforded to Plaintiff under the CFRA and

26  terminated Plaintiff's employment in whole or in part because he requested and/or used CFRA leave.

27       20.     In terminating Plaintiff's employment and retaliating against Plaintiff because he

28  exercised his rights under CFRA, Defendants, and each of them, violated Government Code section

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

4

COMPLAINT FOR DAMAGES

12945.2 and the corresponding California Regulations, including, without limitation, 7297.1, et seq.

21.     Defendants, and each of them, failed to comply with the CFRA in that, among other things, Defendants, and each of them, (a) discouraged Plaintiff from taking leave; (b) repeatedly interfered with Plaintiff's leave while he was taking leave; (c) discouraged Plaintiff from continuing his leave (d) never notified Plaintiff of his rights under the law and the actual amount of CRFA leave available (e) terminated Plaintiff's employment because he took CFRA leave.

22.     At the conclusion of a CFRA leave, an employer must reinstate an employee to the same or equivalent job. Gov. Code § 12945.2(a), 2 Cal. C. Regs. § 7297.2(a),(c).

23.     At the conclusion of Plaintiff's CFRA leave, Defendants failed to reinstate him to his position supervising Red Lobster restaurants in Los Angeles County.

24.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other economic damages, and has necessarily expended sums in the treatment of physical and mental injuries, in an amount to be ascertained at the time of trial.

25.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

26.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

27.     As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Pursuant to the provisions of California Government Code Section 12965 (b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

28.     The above-described acts of Defendants, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

5

COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

others from engaging in similar conduct.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT,

#### GOV. CODE § 12945.2

##### (As against All Defendants)

29.     Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-28, inclusive, above, as though fully set forth in this cause of action.

30.     It is an unlawful employment practice for a covered employer to violate an employee's rights under the CFRA. Gov. Code § 12945.2(a).

31.     In addition to the retaliation prohibited by Government Code section 12940, subdivision (f), it is unlawful "for any person to discharge, fine, suspend, expel, punish, refuse to hire, or otherwise discriminate against any individual, except as otherwise permitted by this subchapter, because that individual has: (a) exercised his or her rights to CFRA leave, and/or (b) given information or testimony regarding his or her CFRA leave, or another person's CFRA leave, in any inquiry or proceeding related to any right guaranteed under this subchapter." Cal. Code of Regs. § 7297.7.

32.     An employee who takes CFRA leave is guaranteed that taking leave will not result in a loss of job security or in other adverse employment actions. *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal. App. 4th 509, 517.

33.     Defendants are employers covered by CFRA.

34.     At all relevant times herein, Plaintiff was an employee eligible to take CFRA leave.

35.     Beginning in March 2007, Plaintiff exercised his right to take leave for a qualifying CFRA purpose.

36.     Plaintiff was terminated because he exercised his rights to CFRA leave.

37.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other economic damages, and has necessarily expended sums in the treatment of physical and mental injuries, in an amount to be ascertained at the time of trial.

6
COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

38. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

39. As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Pursuant to the provisions of California Government Code Section 12965 (b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

40. The above-described acts of Defendants, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

### THIRD CAUSE OF ACTION

### DISCRIMINATION ON THE BASIS OF DISABILITY

### IN VIOLATION OF GOV. CODE § 12940(a)

(As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)

41. Plaintiff repeats, repleads and incorporates by this reference paragraphs 1 through 40, inclusive, as though fully set forth in this cause of action.

42. Defendants are employers as defined by Government Code section 12940, et. seq.

43. At all relevant times herein, Plaintiff was an individual with a disability as defined by the California Fair Employment and Housing Act (hereinafter "FEHA").

44. At all relevant times herein, Plaintiff was perceived by Defendants, and each of them, as having a disability as defined by FEHA.

45. For the duration of his employment, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

46. FEHA requires an employer to make reasonable accommodations for the disability of employees to enable them to perform a position's essential functions, unless doing so would produce undue hardship to the employer's operations. Gov. Code § 12940(m). A finite leave of absence

7

COMPLAINT FOR DAMAGES

constitutes a reasonable accommodation under FEHA for a disabled employee who needs time to recuperate or heal where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future.

47.     As a result of his disability, Plaintiff was in need of a reasonable accommodation, namely, reasonable time off work to recuperate and heal from the symptoms associated with his disability after March 2007, and modified or light duty work.

48.     FEHA makes it an unlawful employment practice to discharge an employee from employment because of the employee's disability or to discriminate against the person in compensation or in the terms, conditions or privileges of employment. Gov. Code § 12940(a), (c).

49.     In violation of FEHA, Defendants terminated Plaintiff because of his disability and need for accommodation.

50.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other economic damages, and has necessarily expended sums in the treatment of physical and mental injuries, in an amount to be ascertained at the time of trial.

51.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

52.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

53.     As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Pursuant to the provisions of California Government Code Section 12965 (b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

54.     The above-described acts of Defendants, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

Exhibit _____A_____, Page__17__

1 | of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

2 | others from engaging in similar conduct.

3 | **FOURTH CAUSE OF ACTION**

4 | **FAILURE TO ACCOMMODATE DISABILITY**

5 | **IN VIOLATION OF GOV. CODE § 12940(m)**

6 | **(As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)**

7 |     55.    Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-54,

8 | inclusive, above, as though fully set forth in this cause of action.

9 |     56.    Defendants, and each of them, are employers within the meaning of and subject to

10 | California Gov. Code § 12940, et. seq.

11 |     57.    At all relevant times herein, Plaintiff was an individual with a disability as defined by

12 | FEHA.

13 |     58.    At all relevant times herein, Plaintiff was perceived by Defendants, and each of them,

14 | as having a disability as defined by FEHA.

15 |     59.    FEHA requires an employer to make reasonable accommodations for the disability of

16 | employees to enable them to perform a position's essential functions, unless doing so would produce

17 | undue hardship to the employer's operations.  Gov. Code § 12940(m).  A finite leave of absence

18 | constitutes a reasonable accommodation under FEHA for a disabled employee who needs time to

19 | recuperate or heal where it appears likely that the employee will be able to return to an existing

20 | position at some time in the foreseeable future.

21 |     60.    As a result of his disability, Plaintiff was in need of a reasonable accommodation,

22 | namely, reasonable time off work to recuperate and heal from the symptoms associated with his

23 | disability after March2 2007, and modified or light duty work.

24 |     61.    Prior to his termination, Plaintiff notified Defendants that he was suffering from

25 | symptoms associated with his disability and was in need of reasonable accommodations.

26 |     62.    Defendants, and each of them, failed and refused to grant reasonable

27 | accommodations, as required by law, to Plaintiff, and instead terminated his employment.

28 |     63.    From the date Plaintiff was hired through his date of termination, he was able to

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

9
COMPLAINT FOR DAMAGES

1   perform the essential functions of his job with or without a reasonable accommodation, and he

2   performed competently and capably.

3       64.     As a direct and proximate result of the acts of Defendants, and each of them, as

4   alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other

5   economic damages, and has necessarily expended sums in the treatment of physical and mental

6   injuries, in an amount to be ascertained at the time of trial.

7       65.     As a direct and proximate result of the acts of Defendants, and each of them, as

8   alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the

9   physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in

10  an amount to be ascertained at the time of trial.

11      66.     As a direct and proximate result of the acts of Defendants, and each of them, as

12  alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and

13  nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

14      67.     As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff

15  has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be

16  proven at the time of trial.  Pursuant to the provisions of California Government Code Section 12965

17  (b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

18      68.     The above-described acts of Defendants, and each of them, were willful, intentional

19  and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition

20  of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

21  others from engaging in similar conduct.

22                          **FIFTH CAUSE OF ACTION**

23              **FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**

24      (As Against Defendants DARDEN RESTAURANTS and DOES 1 through 100, Inclusive)

25      69.     Plaintiff repeats, repleads, and incorporates by this reference paragraphs 1 through

26  68, inclusive, above, as though fully set forth in this cause of action, and further alleges as follows.

27      70.     Defendants, and each of them, are employers within the meaning of and subject to

28  California Gov. Code § 12940.

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

                                            10
                              COMPLAINT FOR DAMAGES

71.     At all relevant times, Plaintiff was an individual with a disability as defined by Government Code §12940.

72.     At all relevant times, Defendants perceived Plaintiff to be an individual with a disability.

73.     Pursuant to Gov. Code § 12940(n), an employer must engage in a "timely, good faith interactive process" in response to a request for a reasonable accommodation by an employee with a known disability or known medical condition.

74.     Govt. Code §12940(n), requires employers to engage in a timely, good faith, interactive process with an employee to determine effective reasonable accommodations if an employee with a known disability so requests.  The interactive process is the key mechanism for facilitating the integration of disabled employees in the workplace and liability may be imposed on the employer for failing to engage in this process

75.     Plaintiff gave notice to Defendants that he had a disability and required reasonable accommodations.

76.     Despite having notice of Plaintiff's disability and his need for accommodation, Defendants, and each of them, by and through their agents and employees, engaged in an unlawful employment practice when they failed and refused to engage in the interactive process, in violation of the Fair Employment and Housing Act.

77.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other economic damages, and has necessarily expended sums in the treatment of physical and mental injuries, in an amount to be ascertained at the time of trial.

78.     As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

79.     As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be

11

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

Exhibit ___A___, Page _20_

proven at the time of trial.  Pursuant to the provisions of California Government Code Section 12965

(b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

80.    The above-described acts of Defendants, and each of them, were willful, intentional

and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition

of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

others from engaging in similar conduct.

**SIXTH CAUSE OF ACTION**

**RETALIATION FOR EXERCISING RIGHTS UNDER**

**THE FAIR EMPLOYMENT AND HOUSING ACT**

**(As Against Defendants DARDEN RESTAURANTS and DOES 1 through 100, Inclusive)**

81.    Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-80,

inclusive, above, as though fully set forth in this cause of action.

82.    In exercising his rights under FEHA, Plaintiff engaged in legally protected activity.

83.    In California, an employer and/or any person may not interfere with or retaliate

against an employee for exercising any right under the Fair Employment and Housing Act.

84.    Defendants, and each of them, terminated Plaintiff's employment in retaliation for

exercising his rights under FEHA, although Defendants were aware that Plaintiff was suffering from

a serious health condition/disability.

85.    Plaintiff's termination constituted an adverse employment action.

86.    As a direct and proximate result of the acts of Defendants, and each of them, as

alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other

economic damages, and has necessarily expended sums in the treatment of physical and mental

injuries, in an amount to be ascertained at the time of trial.

87.    As a direct and proximate result of the acts of Defendants, and each of them, as

alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the

physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in

an amount to be ascertained at the time of trial.

88.    As a direct and proximate result of the acts of Defendants, and each of them, as

12

**COMPLAINT FOR DAMAGES**

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1 | alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and
2 | nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

3 |      89.    As a direct and proximate result of the acts of Defendants, as alleged above, Plaintiff
4 | has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be
5 | proven at the time of trial. Pursuant to the provisions of California Government Code Section 12965
6 | (b), Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

7 |      90.    The above-described acts of Defendants, and each of them, were willful, intentional
8 | and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition
9 | of exemplary and punitive damages in an amount sufficient to punish said defendants and to deter
10 | others from engaging in similar conduct.

11 | **SEVENTH CAUSE OF ACTION**

12 | **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

13 | **(As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)**

14 |      91.    Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-90,
15 | inclusive, above, as though fully set forth in this cause of action.

16 |      92.    The above-described conduct by Defendants, and each of them, was against the public
17 | policy of the State of California as evidenced by the enactment of FEHA (Government Code §
18 | 12900, et seq.) and CFRA.

19 |      93.    In terminating Plaintiff's employment and retaliating against Plaintiff because he
20 | exercised his rights under FEHA and CFRA, Defendants, and each of them, violated Government
21 | Code sections 12940, 12945.2 and the corresponding California Regulations, including, without
22 | limitation, 7297.1, et seq.

23 |      94.    As a direct and proximate result of the acts of Defendants, and each of them, as
24 | alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other
25 | economic damages, and has necessarily expended sums in the treatment of physical and mental
26 | injuries, in an amount to be ascertained at the time of trial.

27 |      95.    As a direct and proximate result of the acts of Defendants, and each of them, as
28 | alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the

13

COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1 physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in

2 an amount to be ascertained at the time of trial.

3      96.   As a direct and proximate result of the acts of Defendants, and each of them, as

4 alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and

5 nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

6      97.   The above-described acts of Defendants, and each of them, were willful, intentional

7 and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition

8 of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

9 others from engaging in similar conduct.

10 <b>EIGHTH CAUSE OF ACTION</b>

11 <b><u>WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY</u></b>

12 <b><u>(LABOR CODE § 132(a))</u></b>

13 <b>(As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)</b>

14      98.   Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-97,

15 inclusive, above, as though fully set forth in this cause of action.

16      99.   Prior to his termination, Plaintiff suffered work-related injuries for which he

17 required medical treatment.

18      100.   Plaintiff notified Defendants of his medical condition and inability to perform the

19 duties of his position for finite periods of time.

20      101.   Plaintiff is informed and believes and thereon alleges that he was terminated

21 because he injured himself on the job and because he had not recuperated fully and would require

22 leave from work and filed a claim for worker's compensation benefits.

23      102.   Plaintiff's termination was against the public policy of the State of California as

24 evidenced by the enactment of Labor Code section 132(a) which provides: "It is the declared policy

25 of this state that there should not be discrimination against workers who are injured in the course and

26 scope of their employment."

27      103.   As a direct and proximate result of the acts of Defendants, and each of them, as

28 alleged above, Plaintiff has incurred compensatory damages, including lost earnings and other

14
<b>COMPLAINT FOR DAMAGES</b>

<b>THE FELDMAN LAW FIRM</b><br>A PROFESSIONAL CORPORATION

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1    economic damages, and has necessarily expended sums in the treatment of physical and mental

2    injuries, in an amount to be ascertained at the time of trial.

3         104.    As a direct and proximate result of the acts of Defendants, and each of them, as

4    alleged above, Plaintiff will necessarily continue to expend sums in the future for the treatment of the

5    physical, emotional and mental injuries sustained by Plaintiff as a result of said DEFENDANTS'

6    acts in an amount to be ascertained at the time of trial.

7         105.    As a direct and proximate result of the acts of Defendants, and each of them, as

8    alleged above, Plaintiff has suffered humiliation, mental and physical distress, anxiety, and

9    nervousness and has been generally damaged in an amount to be ascertained at the time of trial.

10        106.    The above-described acts of Defendants, and each of them, were willful, intentional

11   and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition

12   of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter

13   others from engaging in similar conduct.

14                            **NINTH CAUSE OF ACTION**

15             **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

16                             **(As against all Defendants)**

17        107.    Plaintiff repeats, repleads, and incorporates by reference Paragraphs 1-106,

18   inclusive, above, as though fully set forth in this cause of action.

19        108.    In violation of Government Code § 12945.2 and 2 Cal. C. Regs. § 7297.1, Defendants

20   engaged in an unlawful employment practice by failing to provide Plaintiff with a leave for his

21   medical condition.

22        109.    In violation of Government Code § 12940(a) and 12940(m), Defendants discharged,

23   discriminated and retaliated against Plaintiff for exercising the right to take a disability leave.

24        110.    In violation of Government Code § 12940(h), Defendants retaliated against Plaintiff

25   for exercising his CFRA rights.

26        111.    Defendants, and each of them, terminated Plaintiff's employment because he suffered

27   from a medical condition/disability and required reasonable accommodations.

28        112.    The conduct of Defendants, and each of them, as described above, is extreme and

                                        15
                            COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1   outrageous and exceeds all standards of decency normally associated with a civilized society; that

2   such conduct was intentional and malicious and done for the purpose of, or with reckless disregard

3   for the substantial probability of, causing Plaintiff to suffer humiliation, mental anguish, and

4   emotional and physical distress.

5       113.    Plaintiff did in fact suffer severe emotional distress as a direct and proximate

6   result of the above-described conduct.

7       114.    As a proximate result of the aforementioned outrageous acts of Defendants, and

8   each of them, as alleged above, Plaintiff has suffered physical and mental injuries requiring the

9   expenditure of sums to treat said injuries in an amount to be ascertained at the time of trial; that as a

10  further proximate result of the aforementioned acts of Defendants, and each of them, as alleged

11  above, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress,

12  and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the

13  time of trial.

14      115.    The acts of Defendants, and each of them, as alleged above were intentional,

15  willful and malicious and done in conscious disregard of Plaintiff's rights, safety and well-being and

16  with the intent to vex, injure, and annoy Plaintiff; as such, Plaintiff requests that exemplary and

17  punitive damages be assessed against each of these Defendants in an amount to sufficient to punish

18  said Defendants and to deter others from engaging in similar conduct.

19

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28

16
COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

1 | WHEREFORE, Plaintiff prays for judgment as against all Defendants, as follows:

2

3 | **ON THE FIRST, THIRD, FOURTH, FIFTH AND SIXTH CAUSES OF ACTION**

4 | (As against DARDEN RESTAURANTS and DOES 1 through 100, inclusive)

5 | 1.   For compensatory damages against Defendants according to proof;

6 | 2.   For general damages against Defendants according to proof;

7 | 3.   For reasonable attorney's fees according to proof;

8 | 4.   For exemplary and punitive damages against Defendants according to proof;

9 | 5.   For costs of suit incurred herein;

10 | 6.   For such other and further relief as the court deems just and proper.

11

12 | **ON THE SECOND CAUSE OF ACTION**

13 | (As against ALL Defendants)

14 | 1.   For compensatory damages against Defendants according to proof;

15 | 2.   For general damages against Defendants according to proof;

16 | 3.   For reasonable attorney's fees according to proof;

17 | 4.   For exemplary and punitive damages against Defendants according to proof;

18 | 5.   For costs of suit incurred herein;

19 | 6.   For such other and further relief as the court deems just and proper.

20

21 | **ON THE SEVENTH AND EIGHTH CAUSES OF ACTION**

22 | (As against Defendants DARDEN RESTAURANTS and DOES 1 through 100, inclusive)

23 | 1.   For compensatory damages against Defendants according to proof;

24 | 2.   For general damages against Defendants according to proof;

25 | 3.   For exemplary and punitive damages against Defendants according to proof;

26 | 4.   For costs of suit incurred herein;

27 | 5.   For such other and further relief as the court deems just and proper.

28

17

COMPLAINT FOR DAMAGES

Exhibit _____A_____, Page _26_

## ON THE NINTH CAUSE OF ACTION

### (As against all Defendants)

1. For compensatory damages against Defendants according to proof;

2. For general damages against Defendants according to proof;

3. For exemplary and punitive damages against Defendants according to proof;

4. For costs of suit incurred herein;

5. For such other and further relief as the court deems just and proper.

Dated: August 7, 2008                                    THE FELDMAN LAW FIRM
                                                         A Professional Corporation

                                              By: _____
                                                         ALICIA OLIVARES
                                                         Attorneys for Plaintiff,
                                                         DAVID W. RUTTER

18
**COMPLAINT FOR DAMAGES**

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

Exhibit ___A___, Page ___27___

1

## DEMAND FOR JURY TRIAL

2     Plaintiff hereby demands a trial by jury of the causes of action and claims asserted herein.

3

4

Dated: August 7, 2008

5

THE FELDMAN LAW FIRM
A Professional Corporation

6

7                     By:

8

ALICIA OLIVARES
Attorneys for Plaintiff,
DAVID W. RUTTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19
COMPLAINT FOR DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

EXHIBIT "E"

JACK S. SHOLKOFF, State Bar No. 145097
jack.sholkoff@ogletreedeakins.com
BETH A. GUNN, State Bar No. 218889
beth.gunn@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
633 West Fifth Street, 53rd Floor
Los Angeles, California 90071
Telephone:  (213) 239-9800
Facsimile:  (213) 239-9045

Attorneys for Defendants
GMRI, INC., dba RED LOBSTER, AND
DARDEN RESTAURANTS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. RUTTER,<br><br>        Plaintiff,<br><br>    v.<br><br>DARDEN RESTAURANTS, INC., a Florida Corporation; THE RED LOBSTER, a Corporation; JANE DIANGE, an individual; JIM MCKEATING, an individual; And DOES 1 through 100, Inclusive,<br><br>        Defendants. | Case No. **CV08-06106 JSL (SSx)**<br><br><br>**DECLARATION OF JANE DIANGE IN SUPPORT OF DEFENDANTS' REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |

6654925_1.DOC

# DECLARATION OF JANE DIANGE

I, Jane Diange, hereby declare and state as follows:

1.    At all times relevant to the claims in the above-referenced action, I was the Senior Vice President of Human Resources of GMRI, Inc., dba Red Lobster ("GMRI"), who was named erroneously as "The Red Lobster" in the above-referenced action.  I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, I could and would competently testify thereto.

2.    I currently live and work in the state of Florida, and am domiciled in Florida.

3.    I have not been personally served in the above-referenced matter, and have no knowledge that any person has accepted service on my behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and this declaration was executed on September 16, 2008 at Orlando, Orange County, Florida.

Jane Diange

**PROOF OF SERVICE BY UNITED STATES MAIL**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

 I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action.  My business address is 633 West Fifth Street, 53rd Floor, Los Angeles, California 90071.

 On September 17, 2008, I served the following document(s) described as:

**DECLARATION OF JANE DIANGE IN SUPPORT OF DEFENDANTS' REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

on the persons below as follows:

Alicia Olivares, Esq.
John F. Juenger, Esq.
The Feldman Law Firm
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California  90067
Phone:  (310) 552-7812
Facsimile:  (310) 552-7814

 I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐ deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒ placed the envelope or package for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed envelope or package with postage fully prepaid.

 I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 17, 2008, at Los Angeles, California.

Miltonette Steinberg
Type Name          Signature

CASE NO. ☐
DECLARATION OF JANE DIANGE

6654925_1.DOC

1  JACK S. SHOLKOFF, State Bar No. 145097
   jack.sholkoff@ogletreedeakins.com
2  BETH A. GUNN, State Bar No. 218889
   beth.gunn@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  633 West Fifth Street, 53rd Floor
   Los Angeles, California 90071
5  Telephone:  (213) 239-9800
   Facsimile:   (213) 239-9045
6
   Attorneys for Defendants
7  GMRI, INC., dba RED LOBSTER, AND
   DARDEN RESTAURANTS, INC.
8
                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10

11  DAVID W. RUTTER,                    Case No. CV08-06106 JSL  (SSx)

12              Plaintiff,

13        v.

14  DARDEN RESTAURANTS, INC., a         DECLARATION OF JAMES V.
15  Florida Corporation; THE RED        MCKEATING IN SUPPORT OF
    LOBSTER, a Corporation; JANE        DEFENDANTS' REMOVAL OF
16  DIANGE, an individual; JIM          CIVIL ACTION TO FEDERAL
    MCKEATING, an individual; And       COURT
17  DOES 1 through 100, Inclusive,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JIM MCKEATING

I, James V. McKeating, hereby declare and state as follows:

1.      I am the Senior Vice President of Operations, Paradise Division, of GMRI, Inc., dba Red Lobster ("GMRI"), erroneously named as "The Red Lobster" in the above-referenced action.  I am the "Jim" McKeating named as a defendant in this matter.  I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, I could and would competently testify thereto.

2.      I currently live in and am domiciled in the state of Arizona.

3.      I have not been personally served in the above-referenced matter, and have no knowledge that any person has accepted service on my behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and this declaration was executed on September 16, 2008 at *Scottsdale*, Arizona.

James V. McKeating

2

CASE NO: □

DECLARATION OF JAMES V. MCKEATING

## PROOF OF SERVICE BY UNITED STATES MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 633 West Fifth Street, 53rd Floor, Los Angeles, California 90071.

On September 17, 2008, I served the following document(s) described as:

**DECLARATION OF JAMES V. MCKEATING IN SUPPORT OF DEFENDANTS' REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

on the persons below as follows:

Alicia Olivares, Esq.
John F. Juenger, Esq.
The Feldman Law Firm
10100 Santa Monica Blvd., Suite 2490
Los Angeles, California  90067
Phone:  (310) 552-7812
Facsimile:  (310) 552-7814

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐  deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒  placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed envelope or package with postage fully prepaid.

I am employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Los Angeles, California.

☐  (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (Federal)  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 17, 2008, at Los Angeles, California.

Miltonette Steinberg
Type Name                                    Signature

6653235_1.DOC

EXHIBIT "F"

# Ogletree Deakins

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

*Attorneys at Law*

633 West Fifth Street
53rd Floor
Los Angeles, California 90071
Telephone:    213.239.9800
Facsimile:    213.239.9045
www.ogletreedeakins.com

August 29, 2008

jack.sholkoff@ogletreedeakins.com
Direct Dial: 213.438.1281

**VIA FACSIMILE AND FIRST CLASS MAIL**

Alicia Olivares, Esq.
The Feldman Law Firm
10100 Santa Monica Boulevard
Suite 2490
Los Angeles, California  90067

Re:  *Rutter v. Darden Restaurants, Inc.*
     Los Angeles County Superior Court Case No. BC 3959990

Dear Ms. Olivares:

This will confirm our discussion of August 28.  As I explained, this office represents Darden Restaurants, Inc., Jane Diange and Jim McKeating with regard to the above entitled matter, and we are prepared to accept service for Ms. Diange and Mr. McKeating in this action pursuant to Code of Civil Procedure 415.30.  You agreed that you would forward to us the Summons and Complaint along with the appropriate Notice of Acknowledgment and Receipt Forms for Ms. Diange and Mr. McKeating so we can effectuate service on them.

I also informed you that Mr. Rutter previously agreed to resolve any claims arising from his employment pursuant the Darden Restaurant Dispute Resolution Process ("DRP").  The DRP requires that Mr. Rutter submit any employment related claims against Darden to mediation and arbitration.  I have enclosed a copy of the DRP, as well as Mr. Rutter's acceptance of the DRP for your convenience.  Please let us know by September 4, 2008 whether Mr. Rutter will stipulate to an order staying the legal action against Darden and submitting the matter for resolution pursuant to the terms of the DRP.

Very truly yours,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*Jack S. Sholkoff / ms*

Jack S. Sholkoff
JSS:ms

Enclosures

Atlanta • Austin • Birmingham • Bloomfield Hills • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Greensboro • Greenville • Houston • Indianapolis • Jackson • Kansas City
Los Angeles • Memphis • Miami • Morristown • Nashville • Philadelphia • Pittsburgh • Phoenix • Raleigh • St. Louis • St. Thomas • San Antonio • San Francisco • Tampa • Torrance • Tucson • Washington

## DISPUTE RESOLUTION PROCESS ACKNOWLEDGEMENT

I have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP. I agree as a condition of my employment, to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP.

_David W Kutter_
Employee Name (please print)

_____
Employee Signature

_6289_
Restaurant/Department No.

_____
Management Signature

Social Security Number

_5-26-05_
Date

_Red Lobster_
Company

_5-26-05_
Date

I, as parent/guardian of the below named Employee (Employee), have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP on behalf of Employee. I agree, as parent/guardian that, as a condition of Employee's employment, Employee must submit any eligible disputes he or she may have to the company's DRP and he or she must abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP.

_____
Name of Employee's Parent/Guardian (please print)

_____
Signature of Employee's Parent/Guardian

_____
Date

_____
Name of Management Representative (please print)

_____
Management Signature

_____
Date

# Dispute Resolution
## Process



This booklet is the plan document for the Dispute Resolution Process (DRP) between the Employee and Darden Restaurants, Inc. (the Company). The DRP is governed by the Federal Arbitration Act or whatever state law is required to authorize and/or enforce the arbitration, and the requirements, obligations, procedures and benefits in this booklet are binding on the Employee and the Company during and after the period of the Employee's employment.

The mutual goal of DRP is to resolve work related problems, concerns and disputes between the Employee and the Company in a prompt, fair and efficient way that protects the legal rights of both the Employee and the Company.

This booklet is used throughout the United States, and state laws may vary. The DRP is always to be used and interpreted consistently with applicable law. If there is any conflict between the DRP and any local, state or federal law, the law will be followed. If a provision of the DRP is held to be invalid by a court of competent jurisdiction, that provision may be severed, deleted or revised by the Court to make it legal and valid. The Court severed, deleted or revised provision, shall not affect the remaining provisions of the DRP. Additionally, the DRP may be updated from time to time as required by law.

# Table of Contents

Page 1:       Introduction

Page 3:       How to Use DRP

Page 3:       Open Door

Page 3:       Peer Review

Page 4:       Mediation

Page 5:       Arbitration

Page 9:       DRP Overview

# Introduction

Occasional differences may arise between the Company and an Employee, both during and after employment. The mutual goal is to resolve work-related problems, concerns and disputes in a prompt, fair and efficient way that protects the legal rights of both the Employee and the Company. To accomplish this goal, the Dispute Resolution Process (DRP) is comprised of a four-step process: Open Door, Peer Review, Mediation and Arbitration.

## What is covered under DRP?

The first three steps of DRP—the Open Door, Peer Review and Mediation—apply to all employment-related disputes or claims brought by the Employee against the Company or the Company against the Employee other than those limited "Exceptions" listed below. Some examples of disputes which are covered by the first three steps of DRP include, but are not limited to: disputes about compensation earned, termination, discrimination and harassment.

Only disputes which state a legal claim may be submitted to Arbitration, which is the fourth and final step of DRP. The arbitrator has the authority to dismiss disputes that do not state a legal claim. Examples of legal claims may include but are not limited to: claims that arise under the Civil Rights Act of 1964, Americans With Disabilities Act, Fair Labor Standards Act, Age Discrimination in Employment Act, Family Medical Leave Act, Employee Retirement Income Security Act, unfair competition, violation of trade secrets, any common law right or duty, or any federal, state or local ordinance or statute.

**The DRP is the sole means for resolving covered employment-related disputes, instead of court actions. Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will NOT BE RESOLVED BY A JUDGE OR JURY. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the Employee waive all rights to bring a civil court action for these disputes.**

### Exceptions to DRP:

The DRP is not available to resolve disputes:

> related to Workers Compensation or Unemployment Insurance benefits, or

> that by law cannot be subjected to mandatory arbitration, or

> that are legally required to be arbitrated or resolved under a different process, or

> regarding wage rates, wage scales or benefits, performance standards, work rules, food quality and service standards, or company policies and procedures, including whether to open or close operations; unless these disputes are brought pursuant to a specific federal or state statute, or other applicable legal standard.

Within fourteen (14) days after the receipt of the completed DRP submission form by the DRP department, the party submitting a claim to DRP will be notified whether the claim is eligible for resolution under the DRP.

There will be no right or authority for any dispute to be brought, heard or arbitrated by any person as a class action, collective action or on behalf of any other person or entity under the DRP. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class or collective action in any arbitration proceeding.

## Other Actions

The DRP does not prevent an Employee from exercising statutorily protected rights, including the right to file any administrative charge or complaint with federal or state administrative agencies. It also does not prevent an Employee from participating in any investigation or proceeding conducted by any governmental agency. However, if one of these agencies issues a right to sue notice, the DRP is the only means of resolving the dispute, and binding arbitration is the sole and final process and remedy. Any relief obtained through DRP will be the sole remedy and will be the final resolution of the dispute and all damage claims unless otherwise provided by law.

## Time Limits

All state, federal and administrative agency statutes of limitation and deadlines apply. For example, some states provide for a two-year statute of limitation. Where there are no such statutes of limitation or deadlines, or if the time limits cannot be changed by mutual agreement, then claims of either the Employee or the Company must be submitted to DRP within one (1) year from the date the party requesting DRP first learned of the claim or reasonably should have known about the claim. After submission of the claim, the DRP must be continually pursued with reasonable diligence. Any disputes regarding this provision or any time limits will be decided by the arbitrator.

## How to Contact the DRP Department

If there are any questions about DRP or how to begin the process, please contact the DRP Department by calling toll free, 1-800-817-3171, or in writing to: Dispute Resolution Department, 5900 Lake Ellenor Drive, Orlando, FL 32809.

# How to Use DRP—The Four Steps ▆▆▆▆▆▆▆▆▆▆

## ▆▆▆▆▆ Step 1. Open Door

The first step in resolving a dispute is to use the Open Door.  If the Employee has a workplace concern or dispute, they are to bring it to the attention of their manager. If, for any reason, the Employee does not feel they can talk to their manager about the problem, the Employee should then bring it to the attention of the next person in their chain of supervision, such as their General Manager, Director, Vice President or Senior Vice President, or they may contact a representative from Human Resources or Employee Relations.  In addition, the Employee may contact the DRP Department, by calling toll free, 1-800-817-3171, or in writing to Dispute Resolution Department, 5900 Lake Ellenor Drive, Orlando, FL 32809.

Open Door allows for an open and honest exchange by the people who are closest to the problem and often provides the best insight and opportunity for mutual resolution *The Employee can use all of the steps of DRP or discuss any issue without fear of retaliation.*

## ▆▆▆▆▆ Step 2. Peer Review

If using the Open Door has not resolved the issue, the Employee can submit his or her concern to Peer Review by simply filling out a DRP Submission Form.  Peer Review provides a way for the parties to personally present the issue to a panel of three employees, two who are at the same level in the company as the Employee, and the third being a management-level employee. At Peer Review, the Employee and the Company each have up to thirty minutes to present their position to the panel separately and privately.  The Peer Review panel considers the issue, and makes a non-binding decision, which is communicated to the Employee and the Company within thirty (30) days of the Peer Review.  The Peer Review panel has the ability to grant reinstatement of employment and benefits, back pay, lost wages and reversal of the Company's action or decision.

If the Employee and the Company are both satisfied with the Peer Review panel's decision, both the Employee and the Company will sign the Peer Review response form agreeing to the decision, and the matter will be considered resolved. The decision then becomes final and binding on the Employee and the Company.  If either the Employee or the Company is not satisfied with the review panel's decision, the dissatisfied party can submit the matter to mediation.  If neither the Employee nor the Company requests mediation of the matter (as described below), within thirty (30) days after receiving the Peer Review panel's decision, this will also constitute acceptance of the panel's decision and it will become final and binding on both parties.

## Step 3. Mediation

The request for mediation and notice must be in writing and provided to the other party within thirty (30) days of receiving the Peer Review panel's decision.  Mediation notices to the Company should be sent to: Dispute Resolution Department, 5900 Lake Ellenor Drive, Orlando, FL 32809.

### Procedure

Mediation is conducted in accordance with the Employment Mediation Rules of the American Arbitration Association (AAA), as those rules are in effect at the time the written request for mediation is made.

### Location

The mediation will be held in or near the city where the Employee is or was last employed by the Company, unless the Employee and the Company mutually agree to hold it somewhere else.

### Selection of Mediator

The Employee and the Company will jointly select the mediator and mediation service. If the parties cannot agree, AAA mediation services and the procedures set out in the Employment Dispute Resolution Rules of the AAA will be used.

### Costs

The Company will pay the costs and fees of the mediation service and of the mediator.

### Resolution

If the dispute is resolved during mediation, the Employee and the Company will each sign a written agreement containing the terms of the resolution.  The agreement will be final and binding on both parties and will conclude the DRP process.  The agreement will be fully enforceable in a court of competent jurisdiction.

### Termination of Mediation Without Resolution

The mediation will terminate without resolution if the mediator, the Employee or the Company determine that further attempts to mediate are not worthwhile.  If the mediation is terminated by the mediator, the mediator and/or mediation service will submit written notice to both the Employee and the Company confirming that the mediation has terminated. If the mediation is terminated by the Employee or the Company, the party terminating the mediation will submit written notice to the address of record of the other party via certified or registered mail, return receipt requested, confirming that the mediation has terminated.  A copy of the written notice must also be submitted to the mediator and/or mediation service.

## Step 4. Arbitration

Upon receiving the timely written notice that mediation has concluded without resolution (SEE "Termination of Mediation Without Resolution" on page 4), <u>and if the dispute involves a legal claim</u>, either the Employee or the Company can submit the matter to binding arbitration.

### Eligibility

Only disputes that state a legal claim will be arbitrated (SEE "What is Covered Under DRP" on pages 1 and 2). The arbitrator has the sole authority to determine the eligibility of a dispute for arbitration and whether it has been timely filed. If the arbitrator finds that a dispute does not state a legal claim or has been filed in an untimely manner, the dispute is considered to be resolved.

### Notice

The request for arbitration and notice must be in writing and provided to the other party by certified or registered mail, return receipt requested, within thirty (30) days of receipt of written notification that mediation has been terminated (SEE "Termination of Mediation Without Settlement" on page 4). However, the party requesting arbitration shall have whatever additional time is left on the applicable federal, state or administrative statute of limitation, if any, beyond the thirty (30) days, to request arbitration and submit notice to the other party. For example, some states provide for a two (2) year statute of limitation (SEE "Time Limits" on page 2).

The arbitration notice should be sent to the Dispute Resolution Department, 5900 Lake Ellenor Drive, Orlando, FL 32809, and must identify and describe all claims being submitted to arbitration, the facts upon which the claims are based, and the relief or remedy requested.

### Procedure and Applicable Law

The arbitration will be conducted according to the Employment Dispute Resolution Rules of the American Arbitration Association (AAA), except to the extent modified by DRP or by applicable law. The arbitration and any decision or award made by the arbitrator will be final and binding on the Employee and the Company and enforceable in a court of competent jurisdiction.

The DRP is governed by the Federal Arbitration Act or whatever state law is required to authorize and/or enforce the arbitration. Arbitration shall be the only remedy for resolving any dispute related to the interpretation or application of the DRP or its rules, or any arbitration rules or procedures, including without limitation, the manner in which the arbitration proceeding will be conducted.

### Fees and Costs

The Company will pay the arbitrator's fees and expenses, any costs for the hearing facility, and any costs of the arbitration service.

Any other expenses incurred by the Employee during the arbitration are the Employee's responsibility. Likewise, any other expenses incurred by the Company during the arbitration are the obligation of the Company. This includes, by way of example only, transcript preparation fees, attorneys' fees, and expert witness fees. However, an arbitrator may award fees and costs according to applicable law.

## Location

The arbitration shall take place in or near the city where the Employee is or was last employed by the Company, unless the Employee and the Company agree to hold it somewhere else.

## Selection of Arbitrator

A single arbitrator will conduct the arbitration. The arbitrator must be experienced in law relating to employment disputes, and will be selected by the Employee and the Company jointly. If the Employee and the Company cannot agree on the selection of an arbitrator, one shall be chosen by the arbitration service utilized, according to the procedures set forth in the Employment Dispute Resolution Rules of the American Arbitration Association (AAA).

## Authority of the Arbitrator

In addition to the authority granted to the arbitrator under the Employment Dispute Resolution Rules of the AAA:

1. The arbitrator shall have the authority to determine whether a dispute is subject to arbitration under the terms of the DRP and whether it is timely under the DRP and any applicable laws. The arbitrator also has the authority to rule upon related Motions to Dismiss, Motions for Summary Judgment or other Motions brought by the parties in the same manner as could any court of competent jurisdiction. The arbitrator will have no right or authority to hear or rule on any dispute brought by any person as a class action, collective action or on behalf of any other person or entity under the DRP. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class or collective action in any arbitration proceeding.

2. The arbitrator has the same authority as a court of law to grant requested relief; this would include relief requested regarding temporary restraints and preliminary injunctive remedies. However, this provision does not prevent either the Employee or the Company from requesting available temporary or preliminary injunctive remedies from an appropriate court, provided that the request does not remove the dispute from final resolution by the arbitrator. The request for temporary or preliminary injunctive remedies does not waive the requesting party's right to arbitrate claims covered by the DRP.

3. Unless done pursuant to a specific federal or state statute, or other applicable legal standard, the arbitrator has no authority to establish wage rates, wage scales or benefits, performance standards, work rules, food quality and service standards, or similar company policies and procedures, including whether to open or close operations.

4   The arbitrator may give any weight to the decision of the Peer Review panel that the arbitrator considers proper under the circumstances.

## Date and Duration of the Arbitration Hearing

The arbitrator will set an appropriate time and date for the arbitration and duration of the arbitration after conferring with both the Employee and the Company. Unless the Employee and the Company mutually agree otherwise:

> The arbitration hearing will start no later than ninety (90) days following the date of the selection of the arbitrator. However, the selected arbitrator may extend the hearing date if good cause is shown by either party.

2.   The arbitrator has the authority to set the duration of the hearing after conferring with both parties. Typically, the arbitration hearing shall last no longer than two (2) days. Complex cases may require additional time. The Employee and the Company representative will each have one (1) day to present their side of the dispute. The arbitrator may, for good cause, extend the duration of the hearing and adjust the timing of the presentations. Also, the arbitrator may extend the hearing and any related discovery to whatever extent is necessary to meet any applicable legal requirements.

## Representation

Both the Employee and the Company have the right to be represented by a lawyer of their choice and at their own expense at the arbitration. However, if the Employee notifies the Company that he or she will not be represented by a lawyer at least thirty (30) days before the date of the hearing, the Company will also not be represented by a lawyer at the arbitration.

## Subpoenas and Discovery

The arbitrator has the authority to authorize reasonably needed discovery in addition to that provided by the American Arbitration Association Rules. The Employee and the Company each have the right to subpoena witnesses and documents for the arbitration hearing by requesting a subpoena from the arbitrator. Subpoenas must be served on the other party and submitted to the arbitrator. Any objection to the issuance of any subpoena must be submitted to the arbitrator within ten (10) days following receipt of the request.

## Designation of Witnesses & Exhibits

Unless otherwise determined by the arbitrator, at least fifteen (15) days before the start of the arbitration hearing, the Employee and the Company must provide each other and the arbitrator with a list of witnesses, including any expert witnesses, a brief summary of the testimony each witness is expected to provide, and a list of all exhibits intended to be used at the arbitration. Unless so ordered by the arbitrator, witnesses or exhibits which do not appear on these lists will not be admitted during the hearing. Appropriate rebuttal witnesses and exhibits will be allowed, consistent with AAA Rules.

## Arbitration Transcript

The Company may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings, and will notify the Employee if it chooses to do so. If so, the Employee may obtain a copy of the record by paying a reasonable percentage of the reporter's fee, as determined by applicable state law or the arbitrator, or, if the Company does not arrange for a transcript, the Employee may choose to arrange for a court reporter at their own cost.

## Post-Hearing Briefs

Either the Employee or the Company upon request at the close of hearing, may file a post-hearing brief. Whether briefs are permitted, the time for filing briefs and any additional requirements, such as a maximum page limit, will be set by the arbitrator at the hearing.

## Arbitrator's Decision

The arbitrator shall issue a written decision, including a statement of the arbitrator's findings of fact and conclusions of law, within thirty (30) days after the date the hearing ends.

## Judicial Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and/or to enforce an arbitration award, as may be permitted by law.

# Darden Restaurants
## DISPUTE RESOLUTION PROCESS OVERVIEW

| OPTION | WHAT | WHO | WHY | HOW |
|---|---|---|---|---|
| **1** <br> **Open Door** | A way to discuss and resolve concerns with management without retaliation. <br> • Informal <br> • Covers work-related disputes <br> • Encourages early resolution | Bring concern to: <br> • Manager <br> • General Manager <br> • Director <br> • Employee Relations <br> • Senior Vice President <br> • President | • Encourages early resolution of concern <br> • Open and flexible <br> • Easily accessible <br> • Helps preserve working relationships <br> • Resolves concern amicably <br> • Promotes open Communication | Discuss concern in person with manager or with Employee Relations <br> • Discuss concern with GM or DO, or <br> • Call Employee Relations <br> • See DRP Poster for phone numbers |
| **2** <br> **Peer Review** | A way to bring a concern to a three-member panel for resolution. <br> • Informal <br> • Covers work-related disputes <br> • Panel returns a written decision | Conducted by a trained facilitator. <br> • Three-member panel made up of two peers (co-workers) and one management panelist <br> • Witnesses called at panel's discretion <br> • Conducted by a trained Facilitator selected by you | • Fresh perspective from those outside the issue, but within the Company <br> • Quick resolution of the concern <br> • Helps preserve working relationships | Present concern to a trained panel that will listen, evaluate and return a decision that is not binding unless the parties agree to it. <br> • Submit a completed DRP submission form to DRP Department. Phone: 800-817-3171 |
| **3** <br> **Mediation** | A way to take a dispute to a neutral third party who will assist the Employee and the Company in finding a compromise. <br> • Informal <br> • Covers work-related disputes <br> • Non-binding unless parties agree to settle | Mediator chosen by the Employee and the Company or appointed by the American Arbitration Association or other mediation service. | • Benefit of neutral, outside third-party expert to assist in negotiation <br> • Win-win solution <br> • Fast and inexpensive (no cost to Employee) <br> • Helps preserve working relationships <br> • Non-binding unless both parties agree to a resolution | Present concern to a neutral third party that will assist the Employee and the Company in finding a compromise <br> • Submit a Mediation request form to DRP Dept. <br> • Contact DRP Dept. at 800-817-3171 |
| **4** <br> **Arbitration** <br><br> **Final** | A way to take a dispute to an outside, neutral third party for a decision that is binding on all parties. <br> • Structured, but less formal than court trials <br> • Covers all eligible work-related disputes <br> • Written decision binding on the Employee and the Company <br> • Legal representation allowed but not required (it is the Employee's choice) | Third-party arbitrator, chosen by the Employee and the Company or appointed by AAA or other arbitration service. | • Benefit of neutral, outside third-party expert to make final decision <br> • Arbitrator has authority to grant legal and equitable relief as in a court of law <br> • Quicker resolution than traditional court process <br> • Simpler and more economical; no cost to Employee <br> • Helps preserve working relationships | Present dispute to a neutral third party who will evaluate the issue and return a final decision that is binding on both the Employee and the Company. <br> • If a mediation fails, a DRP-eligible dispute may be pursued by submitting a written notice to the other party |

# Notes

## DISPUTE RESOLUTION PROCESS ACKNOWLEDGEMENT

I have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP. I agree as a condition of my employment, to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP.

_____             Social Security Number
Employee Name (please print)

_____    _____    _____
Employee Signature                               Date

_____    _____        _____
Restaurant/Department No.                      Company

_____    _____    _____
Management Signature                               Date

I, as parent/guardian of the below named Employee (Employee), have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP. I agree, as parent/guardian that, as a condition of Employee's of the DRP on behalf of Employee. I agree, as parent/guardian that, as a condition of Employee's employment, Employee must submit any eligible disputes he or she may have to the company's DRP and he or she must abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP.

_____
Name of Employee's Parent/Guardian (please print)

_____    ____  ___  ___    _____    _____
Signature of Employee's Parent/Guardian                   Date

_____
Name of Management Representative (please print)

_____    _____    _____
Management Signature                               Date

January 2005

\* \* \* Communication Result Report ( Aug. 29. 2008  1:52PM ) \* \* \*

Fax Header)   Ogletree Deakins

Date/Time: Aug. 29. 2008  1:50PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 6820 | Memory TX | 13105527814 | P. 19 | OK | |
| | Steinberg, Millie | | | | |

---

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size

E. 2) Busy
E. 4) No facsimile connection

---

## Ogletree
## Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
*Attorneys at Law*
633 West Fifth Street
53rd Floor
Los Angeles, California 90071
Telephone:   213.239.9800
Facsimile:   213.239.9045
www.ogletreedeakins.com

jack.sholkoff@ogletreedeakins.com
Direct Dial: 213 438.1281

### FACSIMILE TRANSMITTAL

| DATE: | August 29, 2008 | CLIENT/MATTER NO.: | 010663-000025 |
|-------|-----------------|---------------------|----------------|

| TO: | | TELEPHONE | FAX |
|-----|-----|-----------|-----|
| Alicia Olivares, Esq. The Feldman Law Firm | | 310-552-7812 | 310-552-7814 |

| FROM: | Jack S. Sholkoff, Esq. |
|-------|------------------------|

| RE: | Rutter v. Darden Restaurants, Inc. Los Angeles Superior Court Case No. BC 3959990 |
|-----|------------------------------------------------------------------------------------|

| PAGES: | (including cover page)  19 | | PHONE CODE:  8888 |
|--------|----------------------------|--|-------------------|

☒ Original to follow
via U.S. Mail

☐ Original will be sent via
Federal Express

☐ Original will not be sent.
This is your only copy.

MESSAGE:   Please see the attached.

Atlanta • Austin • Birmingham • Bloomfield Hills • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Greensboro • Greenville
Houston • Indianapolis • Jackson • Kansas City • Los Angeles • Memphis • Miami • Morristown • Nashville • Philadelphia
Phoenix • Pittsburgh • Raleigh • San Francisco • St. Louis • St. Thomas • San Antonio • Tampa • Torrance • Tucson • Washington

CONFIDENTIALITY NOTICE: This message and the documents accompanying this facsimile are legally privileged, confidential, and exempt from disclosure under applicable law. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please be advised that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If this communication has been received in error, please notify us by telephone immediately to arrange for the return of the original documents to us. Thank you.

# Ogletree Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

**633 West Fifth Street**
**53rd Floor**
**Los Angeles, California 90071**
**Telephone:     213.239.9800**
**Facsimile:      213.239.9045**
**www.ogletreedeakins.com**

## FACSIMILE TRANSMITTAL

jack.sholkoff@ogletreedeakins.com
Direct Dial: 213.438.1281

| DATE: | August 29, 2008 | CLIENT/MATTER NO.: | 010663-000025 |
|---|---|---|---|

| TO: | | TELEPHONE | FAX |
|---|---|---|---|
| Alicia Olivares, Esq.<br>The Feldman Law Firm | | 310-552-7812 | **310-552-7814** |

| FROM: | Jack S. Sholkoff, Esq. |
|---|---|

| RE: | Rutter v. Darden Restaurants, Inc.<br>Los Angeles Superior Court Case No.  BC 3959990 |
|---|---|

| PAGES: | (including cover page)  19 | PHONE CODE:  #### |
|---|---|---|

☒  Original to follow
    via U.S. Mail

☐  Original will be sent via
    Federal Express

☐  Original will not be sent.
    This is your only copy.

**MESSAGE:**  Please see the attached.

6617499_1.DOC

Atlanta • Austin • Birmingham • Bloomfield Hills • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Greensboro • Greenville
Houston • Indianapolis • Jackson • Kansas City • Los Angeles • Memphis • Miami • Morristown • Nashville • Philadelphia
Phoenix • Pittsburgh • Raleigh • San Francisco • St. Louis • St. Thomas • San Antonio • Tampa • Torrance • Tucson • Washington

*CONFIDENTIALITY NOTICE: This message and the documents accompanying this facsimile are legally privileged, confidential, and exempt from disclosure under applicable law. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please be advised that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If this communication has been received in error, please notify us by telephone immediately to arrange for the return of the original documents to us. Thank you.*

EXHIBIT "G"

**Sholkoff, Jack S.**

| | |
|---|---|
| **From:** | Alicia Olivares [Alicia@leefeldmanlaw.com] |
| **Sent:** | Friday, September 05, 2008 3:59 PM |
| **To:** | Sholkoff, Jack S. |
| **Subject:** | Rutter v. Darden Restaurants - Arbitration |

Jack:

Upon review of the Dispute Resolution Process documentation you graciously provided for my review and consideration, it is evident that it constitutes an unenforceable arbitration agreement and fails to comply with the minimum requirements as set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal. 4th 83 (2000). Accordingly, Plaintiff will not stipulate to submit his claims to arbitration. If you have any questions, please do not hesitate to contact me. I will be out of the office this afternoon, but will be available on Monday.

Regards,

Alicia Olivares



## THE FELDMAN LAW FIRM

THE FELDMAN LAW FIRM   A PROFESSIONAL CORPORATION
10100 SANTA MONICA BOULEVARD   SUITE 2490   CENTURY CITY, CA 90067
P. 310.552.7812   F. 310.552.7814   WWW.LEEFELDMANLAW.COM

Confidentiality Notice: The information in this e-mail (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone. Thank you.

EXHIBIT "H"

Search
Checkout

ABOUT US          DISPUTE RESOLUTION SERVICES          FILE A CASE          AAA UNIVERSITY          NEUTRALS

CONTACT US

PRINT VERSION

Employment Arbitration Rules and Mediation PROCEDURES
Amended and Effective July 1, 2006
To view the summary of changes, click here.

Table of Contents

Introduction
Role of the American Arbitration Association
Legal Basis of Employment ADR
The Fairness Issue: The Due Process Protocol
AAA's Employment ADR Rules
AAA's Policy on Employment ADR
Notification
Costs of Employment Arbitration
Designing an ADR Program
Alternative Dispute Resolution Options
Types of Disputes Covered

Employment Arbitration Rules and Mediation Procedures
1. Applicable Rules of Arbitration
2. Notification
3. AAA as Administrator of the Arbitration
4. Initiation of Arbitration
5. Changes of Claim
6. Jurisdiction
7. Administrative and Mediation Conferences
8. Arbitration Management Conference
9. Discovery
10. Fixing of Locale
11. Date, Time, and Place of Hearing
12. Number, Qualifications, and Appointment of Neutral Arbitrators
13. Party Appointed Arbitrators
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
15. Disclosure
16. Disqualification of Arbitrator
17. Communication with Arbitrator
18. Vacancies
19. Representation
20. Stenographic Record
21. Interpreters
22. Attendance at Hearings
23. Confidentiality
24. Postponements
25. Oaths
26. Majority Decision
27. Dispositive Motions
28. Order of Proceedings
29. Arbitration in the Absence of a Party or Representative
30. Evidence
31. Inspection

## 32. Interim Measures
33. Closing of Hearing
34. Reopening of Hearing
35. Waiver of Oral Hearing
36. Waiver of Objection/Lack of Compliance with These Rules
37. Extensions of Time
## 38. Serving of Notice
39. The Award
40. Modification of Award
41. Release of Documents for Judicial Proceedings
42. Applications to Court
43. Administrative Fees
## 44. Neutral Arbitrator's Compensation
45. Expenses
## 46. Deposits
47. Suspension for Non-Payment
## 48. Interpretation and Application of Rules

Costs of Arbitration (including AAA Administrative Fees)
## For Disputes Arising Out of Employer-Promulgated Plans
Filing Fees
Hearing Fees
## Postponement/Cancellation Fees
Hearing Room Rental
## Abeyance Fees
## Expenses

## For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts

Filing Fees and Case Service Fees
Refund Schedule
Hearing Room Rental
## Abeyance Fee
Expenses

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")

Optional Rules for Emergency Measures of Protection
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
## O-8. Costs

## Employment Mediation Procedures
1. Agreement of Parties
2. Initiation of Mediation
3. Request for Mediation
## 4. Appointment of Mediator
## 5. Qualifications of Mediator
6. Vacancies
7. Representation
8. Date, Time, and Place of Mediation
## 9. Identification of Matters in Dispute
## 10. Authority of Mediator
11. Privacy
12. Confidentiality
13. No Stenographic Record
14. Termination of Mediation
15. Exclusion of Liability

## 16. Interpretation and Application of Rules
## 17. Expenses
## Mediation Fee Schedule

Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes. These rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections, and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures,* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination -- in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act. The specific issue left open by Gilmer was decided 10 years later by the United States Supreme Court in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

The Fairness Issue: The Due Process Protocol

The *Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol,* which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The Due Process Protocol encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal

Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol*.

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures* ). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's *California Employment Dispute Resolution Rules,* which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol,* the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

»The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

»A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review, and internal mediation.

»The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

»Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

»Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures.*

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide,* which is available from the AAA's website, www.adr.org.

Alternative Dispute Resolution Options

Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

## »Pre-Dispute, Voluntary Final and Binding Arbitration

- The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

»Pre-Dispute, Mandatory Nonbinding Arbitration

- The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

»Pre-Dispute, Mandatory Final and Binding Arbitration

- The parties must arbitrate unresolved disputes and they are bound by the outcome.

»Post-Dispute, Voluntary Final and Binding Arbitration

- The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

Employment Arbitration

Rules and Mediation Procedures

1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

* The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.

2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

   i.  notify the Association of its intention to do so and,
   ii. provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

   a.  The parties may submit a joint request for arbitration.
   b.  In the absence of a joint request for arbitration:
       i.   The initiating party (hereinafter "Claimant[s]") shall:
            1. File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.
            2. Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").
            3. Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.
       ii.  The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.
       iii. The Respondent(s):
            1. May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the

    amount in controversy, if any, and the remedy sought.
   2. Simultaneously shall send a copy of any counterclaim to the Claimant.
   3. Shall include with its filing the applicable filing fee provided for by these rules.
  iv. The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.
 c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

 a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
 b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
 c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no administrative fee for initiating a mediation under AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation

 i. the issues to be arbitrated;
 ii. the date, time, place, and estimated duration of the hearing;
 iii. the resolution of outstanding discovery issues and establishment of discovery parameters;
 iv. the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;
 v. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;
 vi. the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;
 vii. the value of bifurcating the arbitration into a liability phase and damages phase;
 viii. the need for a stenographic record;
 ix. whether the parties will summarize their arguments orally or in writing;
 x. the form of the award;
 xi. any other issues relating to the subject or conduct of the arbitration;
 xii. the allocation of attorney's fees and costs;
 xiii. the specification of undisclosed claims;
 xiv. the extent to which documentary evidence may be submitted at the hearing;
 xv. the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;
 xvi. any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

10. Fixing of Locale (the city, county, state, territory, and/or country of the arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

12. Number, Qualifications, and Appointment of Neutral Arbitrators

   a. If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.
   b. Qualifications
      i. Neutral arbitrators serving under these rules shall be experienced in the field of employment law.
      ii. Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.
      iii. The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.
      iv. The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.
   c. If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
      i. Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
      ii. If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
      iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

13. Party Appointed Arbitrators

   a. If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.
   b. Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.
   c. If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.
   d. If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

   a. If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or

any agreed extension, the AAA may appoint the chairperson.

b. If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

c. If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

a. Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

b. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

c. In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

a. Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
   i. partiality or lack of independence,
   ii. inability or refusal to perform his or her duties with diligence and in good faith, and
   iii. any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

b. Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

a. No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

b. Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

a. If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

b. In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c. In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently. The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within

the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

38. Serving of Notice

   a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

   b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

   c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

39. The Award

   a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

   b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

   c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

   d. The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

   e. If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

   f. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

   g. The arbitrator's award shall be final and binding.

40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

42. Applications to Court

   a. No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

   b. Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

   c. Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

   d. Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 45-53).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at www.adr.org).

44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

(i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $900 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a

claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $1,775 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

(iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

(iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

(v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be borne equally by the parties and are subject to reallocation by the arbitrator in the award.

(i) Filing Fees and Case Service Fees

An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
| --- | --- | --- |
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |

| | | |
|---|---|---|
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.Fee Schedule for Claims in Excess of $10 MillionThe following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

Fee Schedulefor Claims in Excess of $10 Million

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

(ii) Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

»100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

»50% of the filing fee, in any case with filing fees in excess of $500, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing. Where the filing fee is $500, the refund will be $200.

»25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

(iii) Hearing Room Rental

The fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the AAA for availability and rates.

(iv) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(v) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

Optional Rules for Emergency Measures of Protection

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

Employment Mediation Procedures

1. Agreement of Parties

Whenever, by provision in an employment dispute resolution program, or by separate submission, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (hereinafter "AAA") or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

2. Initiation of Mediation

Any party to an employment dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the applicable administrative fee.

3. Request for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

4. Appointment of Mediator

Upon receipt of a request for mediation, the AAA shall send simultaneously to each party to the dispute an identical list of five (unless the AAA decides that a different number is appropriate) names of qualified mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement. If the parties are unable to agree upon an mediator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of a mediator to serve. If the parties fail to agree on any of the persons named, or if acceptable mediators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to appoint a qualified mediator to serve.

If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

5. Qualifications of Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

7. Representation

Any party may be represented by a person of the party's choice. The names and addresses of such persons shall be communicated in writing

to all parties and to the AAA.

8. Date, Time, and Place of Mediation

The mediator shall fix the date, time, and place of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

9. Identification of Matters in Dispute

At least 10 days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented. The mediator may require any party to supplement such information.

10. Authority of Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

    a. views expressed or suggestions made by another party with respect to a possible settlement of the dispute;
    b. admissions made by another party in the course of the mediation proceedings;
    c. proposals made or views expressed by the mediator; or
    d. the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

13. No Stenographic Record

There shall be no stenographic record of the mediation process.

14. Termination of Mediation

The mediation shall be terminated:

    a. by the execution of a settlement agreement by the parties;
    b. by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or
    c. by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

**16. Interpretation and Application of Procedures**

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

**17. Expenses**

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

**Mediation Fee Schedule**

The nonrefundable case set-up fee is $325

per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpendable balance to the parties.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

**FILE A CASE**     **CONTACT US**

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS

- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED